908 A.2d 455 (2006)
2006 VT 85
Robert K. McAlister
v.
Vermont Property and Casualty Insurance Guaranty Association and Robert S. Baska, M.D.
No. 2004-547, November Term, 2005
Supreme Court of Vermont
August 11, 2006
Colin R. Benjamin of Benjamin, Bookchin, Colburn & Durrell, P.C., Derby, for Plaintiff-Appellee.
W. Scott O'Connell of Nixon Peabody LLP, Manchester, New Hampshire, and Joseph C. Tanski and Mark D. Robins, Boston, Massachusetts, for Defendant-Appellant.
PRESENT: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.
BURGESS, J.
¶ 1. In this declaratory judgment action, defendant Vermont Property and Casualty Insurance Guaranty Association ("VPCIGA") appeals from the superior court's order, on the parties' cross-motions for summary judgment, that VPCIGA must provide insurance coverage up to $300,000 to defend and indemnify defendant Dr. Robert S. Baska against plaintiff's medical malpractice claim. The issue on appeal is whether plaintiff's claim is a "covered claim" under Vermont's Property and Casualty Insurance Guaranty Association Act, 8 V.S.A. §§ 3611-3626, which governs the extent of VPCIGA's obligations to an insured or claimant when an insurer becomes insolvent. See 8 V.S.A. § 3615. Although we disagree with the reasoning relied upon by the trial court, we conclude that plaintiff's claim is a covered claim under the Act. Accordingly, we affirm.
¶ 2. The relevant undisputed facts may be briefly summarized. Plaintiff claims he suffered injuries as a result of negligent treatment he received from Dr. Baska in 1999. From 1992 through 2001, Dr. Baska carried medical malpractice insurance through PHICO Insurance Company under a "claims-made" policy, which provided coverage only if the medical incident from which the claim arose occurred while the policy was in effect and the claim was made during the policy period. If the policy was cancelled for any reason, PHICO was required to provide Dr. Baska the option to purchase an extended reporting period, or "tail," to assure continuity of coverage for medical incidents that occurred during the time the terminated claims-made policy was in effect. Dr. Baska's policy was cancelled, effective August 25, 2001, and Dr. Baska purchased the extended reporting tail coverage for a one-time premium of $35,512. The extended reporting period became effective the same day the underlying policy was terminated. There was no expiration date for the extended reporting period, so that claims arising from medical incidents that occurred when the claims-made policy was in effect could be reported any time after the tail reporting period commenced.
¶ 3. On February 1, 2002, PHICO was determined to be insolvent and placed into liquidation by order of the Commonwealth Court of Pennsylvania. The order set a deadline of April 1, 2003 for filing claims with the liquidator. On July 30, 2002, plaintiff filed a malpractice lawsuit against Dr. Baska in Lamoille Superior Court and a proof of loss against PHICO with the Pennsylvania liquidator. VPCIGA declined to defend or indemnify Dr. Baska in the suit on the grounds that a claim pursuant to extended reporting coverage must have been filed within thirty days of the liquidation order to be considered a "covered claim" under the Guaranty Association Act. Plaintiff then filed this declaratory judgment action to resolve the dispute over the extent of VPCIGA's obligations.
¶ 4. We begin with a brief discussion of VPCIGA's role under Vermont's Guaranty Association Act. VPCIGA is a nonprofit, unincorporated legal entity created by the Act to provide a limited amount of substitute insurance coverage when an insurer becomes insolvent. 8 V.S.A. §§ 3613, 3615. Membership in the association is compulsory for all insurers writing policies and transacting business in this state. Id. § 3613. The costs of satisfying VPCIGA's statutory obligations for insolvent insurers are distributed among all member insurers. Id. § 3615(a)(3).
¶ 5. To the extent of its statutory obligations, VPCIGA is deemed to be the insurer on "covered claims" and has "all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Id. § 3615(a)(2). VPCIGA's obligation is limited to the insolvent insurer's obligation under the policy from which the claim arises. Int'l Collection Serv. v. Vt. Prop. & Cas. Ins. Guar. Ass'n, 150 Vt. 630, 631, 555 A.2d 978, 978 (1988); see also 8 V.S.A. § 3612(4)(B) (defining "[c]overed claim" as "an unpaid claim . . . which arises out of and is in an amount not in excess of the applicable limits of an insurance policy to which [the Act] applies"). In addition to certain monetary limits, the Act provides the following express limitations to VPCIGA's obligations:
[VPCIGA] shall . . . [b]e obligated to the extent of the covered claims existing prior to the order of liquidation, arising within 30 days after the order of liquidation, or before the policy expiration date if less than 30 days after the order of liquidation, or before the insured replaces the policy or causes its cancellation, if the insured does so within 30 days of the determination. . . . In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises, nor for any claim filed with the association after the final date set for the filing of claims against the liquidator or receiver of the insolvent insurer, nor in any event after the expiration of three years from the date of determination of the insolvency of such insurer.
Id. § 3615(a)(1).
¶ 6. VPCIGA argues that under the terms of the extended reporting tail coverage no claim could exist or arise within thirty days of the order of liquidation where the claim was not reported until after thirty days from the order of liquidation had passed. Plaintiff responds that the purchase of the reporting tail on Dr. Baska's claims-made policy essentially converted the policy to an "occurrence" policy, where a claim is deemed to exist or arise at the time of the medical incident, so long as the medical incident occurred during the policy period, even if the claim is not reported until after the policy period expired. Under plaintiff's argument, the thirty-day cutoff in the first sentence of § 3615(a)(1) is inapplicable in the context of reporting tail coverage where the underlying claims-made policy has already been cancelled. In such a case, plaintiff argues, it is the second sentence that governs, allowing a claim to be filed up until the cutoff date set for filing claims against the liquidator.
¶ 7. On appeal from a grant of summary judgment, we apply the same standard as the trial court. Allstate Ins. Co. v. Vose, 2004 VT 121, ¶ 13, 177 Vt. 412, 869 A.2d 97. Summary judgment is appropriate where there are no material facts in dispute and any party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Here, the facts are undisputed and the parties differ over the construction of both the Vermont Guaranty Association Act and the PHICO insurance contract. As this appeal presents only questions of law, our review is nondeferential and plenary. Concord Gen. Mut. Ins. Co. v. Madore, 2005 VT 70, ¶ 9, 178 Vt. 281, 882 A.2d 1152.

I.
¶ 8. The trial court concluded that 8 V.S.A. § 3615(a)(1) was unclear as to whether the statutory term "order of liquidation" referred to "the initiation of the liquidation proceeding or its final determination." The trial court interpreted the Pennsylvania court's February 2, 2002 order as a "preliminary" order of liquidation, not the "final" one, which the court stated "came several months later." The trial court did not identify what it considered to be the "final" order of liquidation, and we cannot discern what the trial court meant from the record provided. Nevertheless, we disagree with the trial court's conclusion that "the order of liquidation" in § 3615(a)(1) is susceptible to more than one interpretation.
¶ 9. The phrase "order of liquidation" was added to § 3615(a)(1) in 2002, replacing the language "determination of insolvency." 2001, No. 95 (Adj. Sess.), § 2. While it is true that the Guaranty Association Act does not expressly define "order of liquidation," the same legislative act amending § 3615 also amended the definition of an "insolvent insurer" in § 3612(5) to mean an insurer "against whom a final order of liquidation has been entered with a finding of insolvency by a court of competent jurisdiction in the insurer's state of domicile." 2001, No. 95 (Adj. Sess.), § 1. Although it appears that the different statutory phrasing of "final order of liquidation" in § 3612(5) and "the order of liquidation" in § 3615(a)(1) may have caused some confusion for the trial court, we find nothing in the Guaranty Association Act that would lead us to believe the Legislature was referring to two different orders in these sections.
¶ 10. To the extent that additional clarity of the meaning of "the order of liquidation" is needed, we find it in the statutory sections governing liquidation proceedings. As we have often noted, "[i]t is a well-established canon of statutory construction that statutes relating to the same subject matter should be construed together and read in pari materia, if at all possible." Munson v. City of S. Burlington, 162 Vt. 506, 509, 648 A.2d 867, 869 (1994). The liquidation statutes provide that the Commissioner of the Department of Banking, Insurance, Securities, and Health Care Administration may petition the superior court for an order of liquidation, 8 V.S.A. § 7056, or a judicial declaration of insolvency, id. § 7057(d). Section 7057, entitled "Liquidation orders" provides that "[a]n order to liquidate the business of a domestic insurer shall appoint the commissioner and his or her successors in office liquidator and shall direct the liquidator forthwith to take possession of the assets of the insurer and to administer them under the general supervision of the court." Id. § 7057(a).
¶ 11. Reading these statutory provisions together, we conclude there can be only one order of liquidation in this case reasonably contemplated by § 3615-the February 2, 2002 order of the Commonwealth Court of Pennsylvania, entitled "Order of Liquidation," which, by its terms, asserts all of the authority described by § 7057(a).[1] That order declared PHICO to be insolvent, appointed the Pennsylvania commissioner liquidator, and directed the liquidator to take possession of PHICO's property and business affairs and "to liquidate PHICO." Because we conclude the trial court's decision is premised on an erroneous statutory interpretation, and our review is de novo, it is neither necessary nor helpful to our discussion to consider the remainder of the court's rationale.

II.
¶ 12. We now address whether plaintiff's claim, filed more than thirty days after the February 2, 2002 order of liquidation but well before the final date set for filing claims with the liquidator, is a covered claim under the Guaranty Association Act. As noted above, § 3612(4)(B) defines a "covered claim" as a claim arising out of an insurance policy that is subject to the provisions of the Guaranty Association Act. Thus, VPCIGA has no obligation on a claim unless the insolvent insurer, in the absence of insolvency, would have been obligated. See Int'l Coll. Serv., 150 Vt. at 631, 555 A.2d at 978 ("[VPCIGA's] obligation to a policyholder or claimant is limited to the obligation of the insolvent insurer under the policy from which the claim arises." (citing 8 V.S.A. § 3612(4)(B))). Whether VPCIGA is obligated to defend against plaintiff's claim involves a two-part inquiry. We first turn to the language of the relevant policies to determine whether plaintiff's claim meets the statutory definition of a covered claim, and next consider whether § 3615(a) limits the extent of VPCIGA's coverage of the claim. For the reasons set forth below, we agree with plaintiff that his claim is a covered claim under the Act and that neither § 3615(a) nor the policy language of the reporting tail coverage endorsement required the claim to be reported within thirty days of the order of liquidation.
¶ 13. This case involves two separate, but interconnected, insurance policies: the claims-made policy that was in effect from 1992 until it was terminated in 2001, and the extended reporting tail policy, which became effective in 2001 upon termination of the claims-made policy. During the period the claims-made policy was in effect, 1992-2001, PHICO was obligated to cover a claim only if damages were caused by a medical incident that occurred during the claims-made policy period and if the claim was reported to the company while the claims-made policy was in effect. There is no dispute in this case that if Dr. Baska's claims-made policy expired and he did not exercise his option to purchase the extended reporting tail, PHICO's risk would have ended at the time the claims-made policy terminated.
¶ 14. The extended reporting tail coverage, which became effective in 2001 upon cancellation of the claims-made policy, covered Dr. Baska for claims arising from medical incidents that occurred during the underlying claims-made coverage period, 1992-2001, but were not reported until the extended reporting coverage began in 2001. As noted above, the extended reporting coverage has no expiration date and the policy is paid for in full at the time of purchase. There is no dispute that the medical incident giving rise to the claim occurred in 1999, during the time the claims-made policy was in effect, and that the claim was reported in 2002, after the extended reporting tail coverage was purchased. On these undisputed facts, we conclude that the claim was covered by the extended reporting tail policy and satisfies the definition of a covered claim under 8 V.S.A. § 3612(4)(B).
¶ 15. We next consider VPCIGA's contention that § 3615(a), which obligates VPCIGA on covered claims "existing prior to the order of liquidation, [or] arising within 30 days after the order of liquidation," bars VPCIGA's coverage of this claim. VPCIGA argues that: (1) the particular policy language of the extended reporting tail coverage unambiguously conveys that no liability attaches to the insurer for a medical incident until the claim is reported; and (2) it has no statutory responsibility to provide coverage because plaintiff's claim was not reported to the company before or within thirty days after the order of liquidation.
¶ 16. VPCIGA's argument highlights the similar phrasing pattern used in the claims-made policy coverage and the extended reporting tail coverage. The claims-made coverage states that PHICO is obligated to pay damages caused by a medical incident "which occurs on or after the Initial Effective Date [of the claims-made policy] . . ., and for which claim is reported to [PHICO] during the [claims-made] policy period." (Emphasis added.) The extended reporting tail coverage states that PHICO is obligated to pay damages caused by a medical incident "which occurs on or after the Initial Effective Date [of the claims-made policy] . . . and prior to the [date the reporting tail began] . . ., and for which claim is reported to [PHICO] on or after the [date the reporting tail began]." (Emphasis added.) VPCIGA also emphasizes that the tail policy, in its "General Conditions" states that
[a]n extended reporting period does not extend the policy period or the scope of coverage provided. Coverage is limited to claims reported to the Company during the extended reporting period arising from . . . medical incidents . . . which occur on or after the Initial Effective Date as stated in the Declarations and prior to the end of the [claims-made] policy period.
(Emphasis added.)
¶ 17. In construing an insurance contract, we look at all the provisions of a contract together and view the policy in its entirety. Suchoski v. Redshaw, 163 Vt. 620, 622, 660 A.2d 290, 292 (1995) (mem.). While we will not deprive an insurer of an unambiguous provision placed in the policy for its benefit, we resolve any ambiguity in favor of coverage. Viles v. Vt. State Colls., 168 Vt. 459, 463, 724 A.2d 448, 451 (1998). Insurance contracts must be given a "practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties," and "[s]trained or forced constructions . . . are to be avoided." Wendell v. Union Mut. Fire Ins. Co., 123 Vt. 294, 297, 187 A.2d 331, 333 (1963). We conclude that VPCIGA's interpretation is inconsistent with the apparent purpose of the extended reporting tail policy coverage, and we disagree that the policy language in the reporting tail coverage unambiguously provides that no claim arises under the policy until the claim is reported.
¶ 18. The nature and language of this extended reporting tail, for claims arising from medical incidents that occurred under an already terminated claims-made policy, demonstrates that the purpose of the extended reporting tail is to allow unlimited time for a claim to be reported. The additional policy language upon which VPCIGA relies"[c]overage is limited to claims reported to the Company during the extended reporting period arising from medical incidents . . . which occur on or after the Initial Effective Date [of the claims-made policy] and prior to the end of the [claims-made] policy period"clarifies that the tail coverage does not extend coverage for medical incidents occurring beyond the claims-made policy period. Although the coverage descriptions in the claims-made policy and the extended reporting tail policy employ similar phraseology, the different functions of the two policies demonstrate that the language serves different purposes. We recognize the great significance of a reporting requirement for a claim to exist under a claims-made policy. In a claims-made policy, a claim must be made before the policy expires in order for the insured to obtain coverage under the policy. Once the policyholder purchases an unlimited-duration reporting tail on a canceled claims-made policy, however, a timely reporting requirement is no longer essential, and is inconsistent with the purpose of the extended reporting coverage. Under unlimited reporting tail coverage, the reporting requirement serves the function of a typical notice provision.
¶ 19. For the reasons stated above, the time that a claim is reported pursuant to this reporting tail coverage does not determine when the claim arises or exists for the purposes of § 3615(a). We find VPCIGA's suggested interpretation not only impractical and unreasonable under our well-established principles of contract interpretation, but also inconsistent with the purposes of the Guaranty Association Act. As the statute provides, VPCIGA is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all the rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Id. § 3615(a)(2) (emphasis added). To construe policy language for the purposes of § 3615(a) that would have effect only in the case of insolvency is antithetical to the Act.
¶ 20. Our interpretation of the reporting tail policy coverage for the purposes of § 3615(a) is not only reasonable and practical within the context of the Guaranty Association Act, it is also consistent with the statutory provisions governing liquidation proceedings. As we have already concluded, the statutes governing liquidation proceedings and the guaranty association's obligations deal with the same subject matter-an insurer's insolvency-and should be construed in para materia where possible. See supra, ¶ 10. An examination of the liquidation statute lends additional context to the significance of the thirty-day provision in § 3615(a)(1), which, as plaintiff argues, mirrors the provisions in § 7058 of the Liquidation Proceedings Act. Compare 8 V.S.A. § 7058(a) (providing that insurance policies shall continue "in force" for the lesser of thirty days from the order of liquidation, the expiration of the policy coverage, or the date the insured replaces or terminates the policy), with 8 V.S.A. § 3615(a)(1) (providing that VPCIGA is "obligated to the extent of the covered claims existing prior to the order of liquidation, arising within 30 days after the order of liquidation, or before the policy expiration date if less than 30 days after the order of liquidation, or before the insured replaces the policy or causes its cancellation"). Moreover, the second sentence of § 3615(a)(1) establishes firm deadlines to ensure VPCIGA's obligations do not extend beyond the duration of the liquidation proceedings. See 8 V.S.A. § 3615(a)(1) ("In no event shall the association be obligated to a policyholder or claimant . . . for any claim filed with the association after the final date set for the filing of claims against the liquidator or receiver of the insolvent insurer. . . ."); see also Lorain County Bd. of Comm'rs v. U.S. Fire Ins. Co., 610 N.E.2d 1061, 1064 (Ohio Ct. App. 1992) (construing a similar statutory scheme and concluding that "[b]y limiting the period in which claims may be submitted to [the guaranty association] to the period during which the liquidation proceedings are still open, the General Assembly has evidently intended to exclude those insureds whose rights to participate in the liquidation have lapsed").
¶ 21. The thirty-day period under both statutory sections contemplates that policies will remain in force after the order of liquidation for the same period of time, allowing for new occurrences or incidents, i.e. risks, during that period. In considering the application of this statutory language to the policy in this case, it is particularly significant that the claims-made policy had already been terminated in 2001. Dr. Baska did not purchase coverage against future medical incidents in 2001; he purchased an extension of time to report medical incidents that occurred during the coverage period of a cancelled policy.
¶ 22. VPCIGA acknowledged at oral argument that the time bar in the second sentence of § 3615(a)(1) provides finality on VPCIGA's liability for claims in certain occurrence-based policies, where claims are deemed to exist at the time of the occurrence but may be reported much later. VPCIGA argues that while some policies may fit this occurrence-based model, the reporting tail coverage here is still based in claims-made language, requiring a claim to be reported before coverage is triggered.[2] Relying on City of Greensboro v. Reserve Ins. Co., 321 S.E.2d 232, 236-37 (N.C. Ct. App. 1984),[3] a covered claim cannot depend on labels alone; instead, the policy must be examined to discover when the insurer's liability is triggered. The argument that the reporting tail coverage is couched in claims-made language that must be given contractual effect fails to consider the practical distinction between coverage under the claims-made policy and coverage pursuant to the reporting tail. Our conclusion today is not based on labels; rather, we have conducted an examination of the policy under established principles of contract law and statutory construction in concluding that plaintiff's claim is a covered claim that arose, within the meaning of § 3615(a), prior to the commencement of the liquidation proceedings.
Affirmed.
 FOR THE COURT:
 _____________________________________
 Associate Justice
NOTES
[1] Pennsylvania's statutory section describing "orders of liquidation" is substantially similar to 8 V.S.A. § 7057. See 40 Pa. Cons. Stat. Ann. § 221.20(c) (West 2006).
[2] PHICO, in a "notice to policyholder[s]" included with its policy, generally describes occurrence coverage as "coverage for liability arising from personal injury or property damage which occurs during the policy period, no matter when a claim is made." It describes claims-made coverage as "coverage for liability arising from bodily injury or property damage caused by a medical incident which occurs on or after the Initial Effective Date and before the end of the policy period if the claim is first made during the policy period." We note this language, not because it forms a part of the policy coverage-the notice expressly states that the descriptions are merely characteristics of occurrence and claims-made coverage and "not a policy or a comprehensive analysis"-but because the parties either compare or contrast the policy language with typical occurrence coverage in their briefing and arguments. We conclude that the description in the notice is consistent with the parties' mutual understanding of what an occurrence policy covers.

We note that plaintiff's argument that the extended reporting tail coverage serves the functional equivalent of an occurrence policy has been generally recognized by a number of courts. See e.g., Univ. Health Servs., Inc. v. Pa. Prop. & Cas. Ins. Guar. Ass'n, 2005 PA Super. 330, *** 15, 884 A.2d 889 (citing cases and commentary). While this analogy is persuasive based on the general descriptions of occurrence policies and claims-made policies with extended reporting tail coverage, our conclusion today is based on an analysis of this particular insurance contract as well as the statutory language at issue.
[3] In City of Greensboro, lawsuits were filed prior to the declaration of the insurer's insolvency, but the City did not pay the balance of the claims against it within thirty days of the declaration of insolvency. The guaranty association argued that the claim did not arise within the thirty-day period because the policy was one of indemnity, not liability, and therefore no coverage was triggered until the City actually had to pay. The plaintiffs argued that liability attached when the suit was filed, and the court, considering various contractual provisions, agreed. City of Greensboro, 321 S.E.2d at 236-37.