2011 VT 46

## Kenneth Trinder and Larissa E. Trinder v. Connecticut Attorneys Title Insurance Company

[22 A.3d 493]

No. 10-271

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed April 22, 2011

*Stephen S. Ankuda* of *Parker & Ankuda, P.C.*, Springfield, for Plaintiffs-Appellants.

*Michael J. Harris* of *Collins McMahon & Harris, PLLC*, Burlington, for Defendant-Appellee.

¶ 1. **Skoglund, J.** Homeowners filed a declaratory judgment action to establish defendant title insurance company's obligations to defend or indemnify them regarding an encroachment of their septic system onto neighboring property. They appeal the trial court's conclusion that the terms of their title insurance contract did not require title insurer to defend or indemnify homeowners to establish a right to maintain the system. The court found the circumstances were not within the covered title risks absent an action on neighbor's behalf to force removal of the septic system. On appeal, homeowners argue that the trial court: (1) misconstrued the language of the policy, which they contend provides coverage under the forced removal and marketability provisions; and, consequently, (2) erred in determining that there was no obligation to defend homeowners' title. We affirm.

¶ 2. The court found the following facts. Homeowners purchased the land in question on January 3, 2005. In conjunction with the sale, they obtained title insurance from defendant, Connecticut Attorneys Title Insurance Company. Homeowners purchased an expanded policy, and the covered risks of their policy included defending against situations where "Your title is unmarketable," and where "you are forced to remove your existing structure — other than a boundary wall or fence — because: (a) it extends on to adjoining land or on to any easement."

¶ 3. Mount Holly Community Historical Museum, Inc. owns property bordering homeowners' land to the north. In the fall of 2007, homeowners received a telephone call from the museum's realtor requesting a donation towards the museum's planned expansion, and explaining that such goodwill might help settle any dispute concerning homeowners' right to continue having their septic system on the museum's property. This was the first indication homeowners had that their septic tank and leach field encroach on the museum's property.[1] The situation was further explained by a letter the museum sent to homeowners on October 24, 2007. The letter stated that the former owners of both properties had verbally agreed to allow the septic system to be built partially on the museum's property. According to the museum, this permission was revocable upon the museum's request. The letter did not, however, revoke permission, demand removal of the septic system or threaten legal action.

---

[1] Insurer challenges this finding on appeal, claiming that homeowners had notice prior to closing that the septic system was not entirely on their own land. In support, insurer cites two sources of evidence. First, insurer claims that the deposition testimony of homeowners' closing attorney indicates that homeowners knew the septic system was not entirely on the property they purchased. Because the attorney did not testify at trial, this testimony is outside of the record on appeal and we do not consider it. Insurer also cites the purchase and sale agreement, in which the sellers checked a box indicating that the septic system was not entirely on the property. While this provides some evidence that homeowners should have known that the septic system encroached on neighbor's land, there was other evidence to the contrary. Sellers certified in the same survey that there were no encroachments or boundary disputes affecting the property. Homeowners also testified that they had no knowledge of the encroachment until they received the museum's letter. Given the conflicting evidence, the trial court was within its discretion in resolving the evidentiary dispute in the manner that it did. See *Quenneville v. Buttolph*, 2003 VT 82, ¶ 11, 175 Vt. 444, 833 A.2d 1263 (applying clearly erroneous standard of review to trial court's finding of fact).

¶ 4. Homeowners apparently perceived the letter as a threat to their title and contacted their real estate closing attorney, who noticed insurer of homeowners' claim by letter dated January 29, 2008. Insurer replied in May 2008, and informed homeowners that although its findings were not complete it appeared title rights were not implicated.

¶ 5. The museum sent another letter on August 5, 2008, notifying homeowners that the museum intended to begin construction on its land adjacent to homeowners' property. The letter stated that because homeowners had not responded to the previous letter, the museum was "uncertain whether [homeowners'] failure to reply suggests an abandonment of any claim on the part of [homeowners] to the use of the septic system on the Museum's property." The letter further notified homeowners "that the activity which will soon commence may well compromise any such use." The museum did not demand or threaten removal of the septic system; instead the museum expressed a willingness to meet and consider suggestions to resolve the problem.

¶ 6. On August 19, 2008, insurer sent another letter denying coverage. Insurer based its denial on an exception in the policy, which states that there is no insurance for damage that "an accurate survey or personal inspection of the land would disclose." According to insurer, a survey and inspection would have revealed the encroachment. Insurer also explained in its letter that no coverage attached because the alleged encroachment did not make homeowners' title defective.

¶ 7. On September 5, 2008, homeowners filed suit naming insurer and the museum as defendants. Against insurer, homeowners sought a declaratory judgment ordering insurer to prosecute its right to have the septic system on the museum's land based on the forced removal and marketability provisions of the policy. Homeowners also alleged that insurer had breached the title insurance contract by declining coverage and sought damages. As to the museum, homeowners claimed a right to title or access to the land where the septic system was located by adverse possession, prescriptive easement or license. The museum did not countersue or request injunctive relief to have the septic system removed.

¶ 8. In August 2009, homeowners and the museum reached an agreement setting a mutual boundary line and settling rights. Homeowners received the right to maintain their septic system in

the same location as long as they replaced their septic tank with a new, larger tank with filters, and the museum obtained the right to share homeowners' artesian well and to locate their propane tank on homeowners' property. Homeowners continued to pursue their claim against insurer, alleging that its denial of coverage breached the parties' contract and seeking damages for engineering costs, the septic tank replacement, and attorney's fees.

¶ 9. Following a bench trial, the court ordered judgment in insurer's favor. The court concluded that pursuant to the plain meaning of the insurance contract there was no coverage under the forced removal clause. The court held that homeowners were not "forced" to remove their septic system because the museum did not demand removal by letter or file suit or countersuit to compel removal. The court further held that the marketability provision did not apply because there was no challenge to homeowners' title.

¶ 10. On appeal, homeowners claim that two covered risks are triggered in this case. First, they argue that there is coverage under the covered title risk protecting them against being "forced to remove [their] existing structure . . . because . . . [i]t extends on to adjoining land." They contend that the museum was forcing them to remove their septic system because it extended onto museum land, and, thus, insurer was obligated to defend and indemnify them. Second, they argue that their title is unmarketable due to the encroachment of their septic system on the museum's land.

■ ¶ 11. The proper construction of language in an insurance contract is a question of law that we consider de novo. *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 2004 VT 93, ¶ 8, 177 Vt. 215, 862 A.2d 251. The terms of an insurance contract are accorded their plain meaning, and "[a]ny ambiguity will be resolved in the insured's favor, but we will not deprive the insurer of unambiguous terms placed in the contract for its benefit." *Id.* ¶ 9. Further, we give insurance contracts a "practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties, and strained or forced constructions are to be avoided." *McAlister v. Vt. Prop. & Cas. Ins. Guar. Ass'n*, 2006 VT 85, ¶ 17, 180 Vt. 203, 908 A.2d 455 (quotation and alterations omitted).

¶ 12. Here, homeowners' right to coverage turns on the meaning of the policy's terms extending coverage to instances where the

insured is "forced to remove" a structure. Applying the ordinary meaning of the language, the trial court concluded that homeowners were not forced to remove their septic system because the museum did not demand removal in its letters or seek to enforce removal through suit or countersuit. Homeowners argue that the court's interpretation was overly narrow and that this clause should instead be given a broader interpretation with the reasonable expectation of the parties in mind because "[t]here are many forms of coercion that equate with force, a Court order being only one." According to homeowners, potential damage, in addition to literal removal, should be included because it also results in loss of the septic system's use. Homeowners contend that the museum's letter of August 2008, notifying them that the museum would begin construction that might affect use of the septic system, was sufficient to meet the requirement of forced removal.

¶ 13. We conclude that the language of the clause is unambiguous and by its terms applies only to situations where an insured is "forced to remove" structures that encroach on the property of another. To require coverage in situations where a structure is on neighboring land, but the neighbor has not affirmatively sought its removal, would extend the policy beyond its terms. See *McAlister*, 2006 VT 85, ¶ 17 (explaining that in construing insurance contract, court should avoid strained or forced construction). The clause is inapplicable here because the museum took no action to force homeowners to remove their septic system. The museum did not revoke permission to have the septic system on its property, nor did it demand removal by letter or through court action. That homeowners wished to resolve the uncertainty before the situation reached that level is understandable, but does not result in coverage that is beyond the terms of the policy.

¶ 14. We need not reach homeowners' argument that potential imminent damage is synonymous with forced removal and could trigger coverage because under the facts found by the trial court there was no such impending demolition of homeowners' septic system in this case. While the museum's August 2008 letter notified homeowners that planned construction might influence homeowners' use of the septic system, this was not a threat of imminent destruction. The letter merely warned homeowners of the museum's belief that it could revoke permission for having the septic system on its land and request removal at any time. As the

trial court found, however, the museum did not revoke permission, demand removal, or threaten destruction by letter or through legal means such as countersuit or the request of declaratory relief.[2] Therefore, we conclude that there was no coverage under this covered risk.

¶ 15. Our construction of the policy's language is consonant with the decisions from the few other courts that have addressed similarly worded forced removal clauses in title insurance contracts. In *Manneck v. Lawyers Title Insurance Corp.*, 33 Cal. Rptr. 2d 771 (Ct. App. 1994), the insureds sought a declaratory judgment requiring their title insurance company to prosecute an action on their behalf to resolve the problem that their swimming pool and deck were constructed on their neighbor's property. The insureds sought coverage based on a forced removal provision. The court concluded that the language of the policy was clear and the insurer had no duty to pursue an action "when made aware of the mere potential, rather than the present existence, of the forced removal of [the insureds'] improvements." *Id.* at 776. The court explained that the insurer had no obligation under this covered risk until "a court order requiring removal or the imminent destruction of the encroaching improvements by bulldozers." *Id.* Similarly, a Minnesota appellate court held that a title insurance company had no duty to defend under a forced removal clause where there had been no demand for the insureds to remove the structures that encroached on neighboring property. *Fee v. Stahley*, No. A07-2211, 2008 WL 4849844, at \*4 (Minn. Ct. App. Nov. 10, 2008) (unpub. op.). As the court explained, "[t]he policy covers actual loss, and because [the insureds] have suffered no loss, their claim is currently either improper or premature." *Id.* Such is the case here. The mere existence of homeowners' septic system on the neighboring museum property did not trigger coverage until homeowners were forced to remove the offending structure.

■ ¶ 16. Homeowners also argue that the mere existence of the septic system on the museum's property created a cloud on homeowners' title and made the title unmarketable. Therefore, they seek to invoke the clause of the policy providing coverage when "title is unmarketable." Marketable title is defined as "title

---

[2] Because it is not raised in this appeal, we do not address whether a demand in a letter would be sufficient to trigger coverage.

that will enable [the purchaser] to hold the land purchased free from the probable claim by another, a title which, if he wished to sell, would be reasonably free from doubt." *First Nat'l Bank of St. Johnsbury v. Laperle*, 117 Vt. 144, 157, 86 A.2d 635, 643 (1952). Homeowners assert that their property is now unmarketable as evidenced by the fact that when they listed the property for sale, they were impaired in their ability to sell it at a reasonable price because of the uncertainty regarding the septic system. Apparently, the only offers homeowners received were contingent upon resolving the location of the septic system. Because of this difficulty, homeowners argue that their title is unmarketable.

■ ¶ 17. We are not persuaded. Homeowners' ability to sell their home at a reasonable price is separate from the question of whether homeowners hold marketable title to their property. As one scholar explained, "defects which merely diminish the value of the property, as opposed to defects which adversely affect a clear title to the property, will not render title unmarketable within the meaning and coverage of a policy insuring against unmarketable title." 11 L. Russ & T. Segalla, Couch on Insurance 3d § 159:7, at 159-17 (2005).

■ ■ ¶ 18. The fact that homeowners' septic system is partially located on the museum's land created no challenge to homeowners' title to the property described in their deed. See *Manneck*, 33 Cal. Rptr. 2d at 776 (explaining that the fact that plaintiffs' improvements encroached on their neighbor's land did not implicate plaintiffs' title to their property). Homeowners hold title to their property free and clear of any adverse claim. No party asserts an interest in the land described in homeowners' deed. While the location of the septic system on the museum property may have had an impact on the value of homeowners' property, that is a separate question from the issue of title. *Id.* ("Plaintiffs thus have confused title with the physical condition or value of the property they purchased."). "[O]ne can hold perfect title to land that is valueless and one can have 'marketable title' to land while the land itself is unmarketable." 11 Russ & Segalla, *supra*, § 159:7, at 159-17. The possibility that in the future the museum might revoke permission and require removal of the septic system did not implicate homeowners' title. Cases in which courts have found coverage for encroachments on neighboring land involve different facts or application of different insurance clauses and language.

See *Rackouski v. Dobson*, 634 N.E.2d 1229, 1232 (Ill. App. Ct. 1994) (holding that title insurance company was obligated to defend insureds after insureds' neighbor filed a complaint alleging that insureds' barn and fence encroached on neighbor's property because "reasonable persons would not purchase property which would require them to either remove a substantial portion of a building from the property or defend a lawsuit, or both"); *First Am. Title Ins. Co. v. Dahlmann*, 2006 WI 65, ¶¶ 31-42, 715 N.W.2d 609 (holding that substantial encroachment onto adjoining land was an encumbrance and covered under title insurance contract where survey and encroachment exception was deleted from policy).

■ ¶ 19. Further, if the marketability clause were construed to cover this type of situation, it would render the specific provision dealing with encroachments onto neighboring land meaningless. We decline to construe the insurance contract in such a manner. "Contracts of insurance, like other contracts, must receive practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties . . . [and the] entire contract is to be construed together for the purpose of giving force and effect to each clause." *Town of Troy v. Am. Fid. Co.*, 120 Vt. 410, 417, 143 A.2d 469, 474 (1958). In general, when a contract contains both general and specific provisions relating to the same matter, the more exact terms are given greater weight than the general language. *Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc.*, 163 Vt. 433, 439, 658 A.2d 31, 35 (1995). The title insurer addressed the issue of encroachments onto neighboring land, but limited its liability to situations where the policy holder was forced to remove the offending structure. As explained above, homeowners were not forced to remove the septic system, and no coverage attaches.

¶ 20. Finally, homeowners argue that there is coverage under covered risk number twenty, protecting against "[o]ther defects, liens or encumbrances." Homeowners contend that the septic tank's encroachment on the museum land was an encumbrance and should be covered. In support, homeowners cite *First American Title Insurance Co. v. Dahlmann*, which held that under the particular title insurance contract in that case, "a substantial encroachment, created by an improvement onto adjacent land, constitutes an encumbrance on the title of the insured property." 2006 WI 65, ¶ 2. Homeowners did not rely on this covered risk in

their pretrial filings or at trial. The only mention of encumbrance is in homeowners' requests to find, filed after trial, in which homeowners included the following paragraph:

39. The existence of the waste water disposal system of the [homeowners'] property being located mostly on the adjacent property constituted a substantial encroachment and an encumbrance on the title of the insured property and rendered that property unmarketable under Vermont law. Regarding encroachments on adjoining parcels resulting in an encumbrance of title issuance, see *First American Title Insurance Company v. Dahlmann* . . . .

Homeowners did not cite covered title risk twenty pertaining to encumbrances or delineate that they were asserting coverage under this separate provision.

■ ¶ 21. We conclude that homeowners' limited reference to this argument in their requests to find was insufficient to properly preserve the issue for our review because the argument was not made with enough clarity to allow the trial court to rule on the issue. *Progressive Ins. Co. v. Brown ex rel. Brown*, 2008 VT 103, ¶ 6, 184 Vt. 388, 966 A.2d 666 (explaining that "in order to rely upon an argument on appeal, an appellant must properly preserve it by presenting it to the trial court with specificity and clarity" (quotation omitted)). Because the issue was not preserved, we do not reach it.

¶ 22. In sum, we hold that the existence of homeowners' septic system on the museum land did not trigger the covered title risks in homeowners' policy pertaining to forced removal and marketability of title. Because the covered title risks were not applicable, insurer had no duty to defend, and there was no breach of the insurance contract.

*Affirmed.*