Hemond v. Frontier Commc'ns of Am., Inc., No. S0991-09 CnC (Grearson, J., Oct. 18, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                          CIVIL DIVISION
Chittenden Unit                                    Docket No. S0991-09 CnC

MICHAEL HEMOND and
TRACEY HEMOND
        Plaintiffs

        v.

FRONTIER COMMUNICATIONS OF
AMERICA, INC., f/k/a CITIZENS
COMMUNICATIONS COMPANY,
d/b/a CITIZENS ENERGY SERVICES,
VERMONT ELECTRIC POWER COMPANY, INC.,
STANTEC CONSULTING, INC., STANTEC
CONSULTING CORPORATION, STANTEC
CONSULTING SERVICES, INC., f/k/a
DUFRESNE HENRY, NAVIGANT CONSULTING, INC.,
TURNER ELECTRIC CORPORATION, TURNER
ELECTRIC, LLC, GRAYBAR ELECTRIC COMPANY, INC.
        Defendants

RULING ON NAVIGANT'S MAY 1, 2012 MOTION FOR SUMMARY JUDGMENT

        Navigant's motion in this personal injury case involves questions of contractual indemnity. The following introductory background is necessary to put the present motion in context. Plaintiff Michael Hemond suffered electrocution injury on September 28, 2006 when, while working as a lineman for the Vermont Electric Cooperative, Inc. (VEC), he operated Switch 14E at the electrical substation in Richford, Vermont. In 2009, Mr. Hemond and his wife brought this suit against the above-named defendants alleging, among other things, negligence in their respective roles in the design, manufacture, installation, and construction of the substation, the selection and use of switches in the substation, the planning and implementation of electrical switching operations, and related consulting, advising, and supervising work.

        Although Mr. Hemond's injury occurred while he was working for VEC, the allegedly negligent acts occurred some years before then, at which time Citizens Communications Company (Citizens)[1] owned the utility assets at issue and employed Mr. Hemond. Citizens contracted with Navigant Consulting Group, Inc. (Navigant) to provide design and engineering services with regard to Citizens' work on the substation, which included installation of Switch 14E.

---

[1] Now Frontier Communications of America, Inc.

In December 2010, Citizens sought summary judgment on the grounds that it was entitled to the defense of the workers' compensation exclusivity bar. The Court (Katz, J.) denied that motion at a hearing on June 15, 2011, and in its December 22, 2011 ruling (Grearson, J.) denied Citizens' motion to reconsider and its alternative motion to take an interlocutory appeal. In an Entry Order filed on February 3, 2012, the Supreme Court granted Citizens' motion for permission to appeal the December 22, 2011 decision denying Citizens' motion for reconsideration.[2]

Meanwhile, a mediation in February 2011 resulted in a settlement between plaintiffs and Turner, Navigant, VELCO, Graybar, and Stantec. Citizens participated in the mediation, but left after several hours, and was not a party to the settlement. See Shahi Aff. ¶ 3 (filed June 1, 2012). On February 7, 2011, Citizens filed cross-claims for indemnification against its co-defendants, including a claim against Navigant for implied indemnification. Having settled with all of the defendants except for Citizens, plaintiffs moved for their voluntary dismissal on February 25, 2011. Citizens took the position that its co-defendants should not be dismissed from the case entirely because it had filed cross-claims against them. Each of the co-defendants filed motions seeking dismissal or summary judgment on Citizens' claims for indemnification against them. Each of those motions has now been granted.

In the midst of Citizens' cross-claims seeking indemnification from its co-defendants, Navigant filed its own cross-claim for indemnification against Citizens on March 3, 2011. The cross-claim alleges that Citizens' contract with Navigant contains an express provision that requires Citizens to indemnify Navigant for any and all liability— including attorney's fees—that may arise in connection with work performed pursuant to the contract. Noting that it has paid a sum to plaintiffs to settle plaintiffs' claims against Navigant, and incurred attorney's fees in connection with the action, Navigant seeks a judgment against Citizens on the basis of the indemnification language in the contract. Citizens answered Navigant's cross-claim, denying that Navigant is entitled to indemnity from Citizens, and asserting a variety of affirmative defenses.[3]

On May 1, 2012, Navigant filed a motion for summary judgment on its March 3, 2011 cross-claim. Citizens opposes the motion, arguing that the Court lacks jurisdiction to decide it because of the interlocutory appeal currently before the Supreme Court. Without waiving its jurisdictional argument, Citizens also opposes the motion on its merits. Navigant has not filed a reply memorandum. The Court begins with the jurisdictional question.

---

[2] The interlocutory appeal in the Supreme Court is docketed No. 2012-006. As of this writing, the Supreme Court has not decided the appeal.

[3] The affirmative defenses Citizens asserts are: (1) failure to state a claim; (2) no express or implied indemnification; (3) independent negligence; (4) acquiescence; (5) "[t]he denials and defenses of Citizens to the allegations against it by the plaintiffs . . . and . . . Navigant's defenses to plaintiffs' complaint"; (6) Navigant's liability, if any, was not adjudicated by virtue of its settlement; (7) voluntary payment; (8) unreasonable settlement; (9) workers compensation exclusivity bar; (10) lack of consent; (11) waiver or failure to properly reserve or preserve the claim; (12) to the extent any settlement with plaintiffs was paid by Navigant's insurer, lack of privity or standing. Answer at 2–3 (filed Mar. 17, 2011).

## I. Jurisdiction[4]

In Vermont, "when a proper notice of appeal from a final judgment or order of the lower court is filed the cause is transferred to [the Supreme] Court, and the lower court is divested of jurisdiction as to all matters *within the scope of the appeal*." *Kotz v. Kotz*, 134 Vt. 36, 38 (1975) (emphasis added). Citizens asserts that Navigant's claim for indemnification is generally within the scope of the pending appeal, and that Citizens has specifically raised the worker's compensation exclusivity bar as a defense to Navigant's claim.

The Court fails to see how the worker's compensation exclusivity bar could be a defense to Navigant's indemnification claim. If the bar applies, it would immunize Citizens against *plaintiffs'* claims. But it would not immunize Citizens against *Navigant's* claim, since Navigant's claim is not one for a workplace injury, but rather for contractual indemnification. The cases that Citizens cites in its September 4, 2012 filing are inapposite. *New England Telephone & Telegraph Co. v. Central Vermont Public Service Corp.* is more persuasive. See 391 F. Supp. 420, 427 (D. Vt. 1975) (holding that the exclusivity provision of Vermont's Worker's Compensation Act did not preclude an indemnification action by a tortfeasor against an employer because an express contractual obligation creates an independent duty owed by the employer to the third party, and because a contrary holding "would be to fail to give effect to the intent of the contracting parties").

Citizens also maintains that Navigant's cross-claim is more generally within the scope of the appeal. Of course it is not enough to say that the cross-claim arises out of Mr. Hemond's injury and the events preceding it—the scope of the appeal does not involve every legal issue spawned by the facts of this case. But Citizens asserts that it has raised affirmative defenses to Navigant's contractual indemnity claim that depend on the outcome of the appeal: voluntary payment, unreasonable settlement, and Citizens' defenses to the plaintiffs' claim. The problem with that assertion is that Citizens does not explain how the defenses it mentions involve the workers compensation exclusivity bar. The Court therefore concludes that Navigant's claim for contractual indemnification against Citizens—and Citizens' defenses to that claim—are not within the scope of the appeal pending with the Supreme Court, and that this Court retains jurisdiction to rule on Navigant's summary judgment motion.

## II. Merits—Contractual Indemnity

### A. Background

The following facts are undisputed except where noted. Citing the affidavit of its Associate General Counsel Dawn M. Cassie, Navigant asserts that it acquired "REED Consulting Group ('REED')" in 1997, and that following the acquisition of REED,

---

[4] The court has considered and appreciates the parties' supplemental briefing on the jurisdictional question.

Navigant on occasion did business under the name "Navigant Consulting Inc./Reed." Navigant's Ex. 2 ¶¶ 2, 4 (filed May 1, 2012). Citizens asserts that Ms. Cassie "fails to specify whether Navigant Consulting Inc./Reed was a registered factitious business name." Citizens' SUMF in Opp'n ¶ 5 (filed June 1, 2012).

It is undisputed that, in a letter dated July 23, 1999 and printed on "Navigant Consulting, Inc." letterhead, Victor Blanchet, Jr. offered to Citizens the consulting services of "Navigant Consulting Inc./Reed (NCI/Reed)." Navigant's Ex. 1-1 (filed May 1, 2012). Specifically, the offer was to supply "on-going technical and professional support for [Citizens'] Vermont Electric Division." *Id*. The letter recited the understanding that Citizens had requested that Eugene Shlatz would provide those services. *Id*. The July 23 letter makes no reference to the Richford Substation upgrade, although it does state the following: "We anticipate that Citizens will require Mr. Shlatz's services for up to two to three days per week, and that much of his time would be spent on site in Newport, Vermont." *Id*. On July 26, 1999, Citizens' Vice President and General Manager Gary Kellogg accepted the offer by signing the July 23 letter. *Id*.

Citizens suggests, without citing anything in the record, that "REED Consulting Group" is not the same as "Reed Consulting Group, Inc.," and that the former has nothing to do with this case. The Court does not see how that fact, even if true, supports Citizens' assertion—again without any citation to the record—that Navigant was not a party to the July 23 letter. See Citizens' SUMF in Opp'n ¶ 2 ("[D]isputed as to the assertion that Navigant was the contracting party."). The evidence is that Navigant occasionally did business under the name "Navigant Consulting Inc./Reed." Whatever happened between Navigant and any Reed entity, and regardless of whether Navigant registered "Navigant Consulting Inc./Reed" as a trade name, that evidence amply supports the conclusion that Navigant was a party to the July 23 letter. Citizens has not offered any evidence to the contrary.

The July 23 letter included the following statement: "Our work would be performed under NCI/REED's Standard Terms and Conditions, which are attached." *Id*. Navigant asserts that those terms and conditions are spelled out in a document entitled "REED CONSULTING GROUP TERMS AND CONDITIONS," which is included along with the July 23 letter in Navigant's Exhibit 1-1. Citizens contends that there is no evidence to establish that this document was the document referred to in the July 23 letter, noting that it is not signed or initialed by Mr. Kellogg, and is not titled "NCI/REED Standard Terms and Conditions" as the July 23 letter mentioned. The Court agrees that the document was not signed or initialed by Mr. Kellogg, and that the document is not entitled "NCI/REED Standard Terms and Conditions." But Citizens has not come forward with affirmative evidence stating that the document is not the correct one, nor has it supplied a document that it thinks is the true statement of the terms and conditions.

The Court concludes that Ms. Cassie's affidavit is sufficient evidence to establish that the document included in Exhibit 1-1 is the document referenced in the July 23 letter. The Court also notes that the evidence is that Navigant had acquired REED Consulting

4

Group, so it makes sense that Navigant's and REED's terms would be the same. In any case, Citizens has not supplied any evidence to dispute Navigant's evidence on this point. The document entitled "REED CONSULTING GROUP TERMS AND CONDITIONS" referenced in the July 23 letter includes the following provision:

> **Responsibility Statement** – REED agrees that the services provided for herein will be performed in accordance with recognized professional consulting standards for similar services and that adequate personnel will be assigned for that purpose. If, during the performance of these services or within one year following completion of the assignment, such services shall prove to be faulty or defective by reason of a failure to meet such standards, REED agrees that upon prompt written notification from you prior to the expiration of the one-year period following the completion of the assignment of any such fault or defect, such faulty portion of the services shall be redone at no cost to you up to a maximum amount equivalent to the cost of the services rendered under this agreement. The foregoing shall constitute REED's sole liability with respect to the accuracy or completeness of the work and the activities involved in its preparation. In no event shall REED, its agents, employees, or others providing materials or performing services in connection with work on this assignment be liable for any direct, consequential or special loss or damage, whether attributable to breach of contract, tort, including negligence or otherwise; and except as herein provided, you release, indemnify, and hold REED, its agents, employees, or others providing materials or performing services in connection with work on this assignment harmless from and against any and all liability including costs of defense settlement and reasonable attorney's fees, therefor.

Ex. 1-1 ¶ 7.

In a letter dated May 30, 2001, Mr. Shlatz wrote to Andrew Letourneau at Citizens indicating that "Navigant Consulting Inc. (NCI) is pleased to offer its services to provide technical and economic consulting assistance to support a Certificate of Public Good (CPG)" for "the HK Webster and Troy Street substations located in Richford, Vermont." Ex. 1-2. The letter goes on to say that "Navigant proposes to perform these tasks under Navigant's existing services contract." *Id*. In a letter dated June 7, 2001, Mr. Letourneau replied to Mr. Shlatz, writing: "I have reviewed your proposal regarding the Richford and HK Webster Section 248 Project and find the content and estimate to be acceptable. You are hereby authorized to begin work as outlined in your letter dated May 30, 2001." Shlatz Dep. 63:17–21, Aug. 23, 2010 Ex. 76.

As mentioned above, Mr. Hemond's injury occurred in Richford on September 28, 2006. Navigant was served with the complaint in this case on August 19, 2009, and entered an appearance through counsel shortly after September 1, 2009. Navigant twice tendered the defense of this lawsuit to Citizens, and demanded that Citizens defend and

5

indemnify Navigant, the first time within a month of service of the complaint. Citizens refused to undertake the defense and provide indemnification.

After tender of the defense, Navigant entered into settlement discussions with the plaintiffs. Those discussions culminated in a mediation session on February 1, 2011, and a settlement agreement was executed between the plaintiffs and all defendants except Frontier on or about February 2, 2011.[5] Pursuant to the settlement agreement, Navigant paid to plaintiffs the sum of $225,000. Cassie Aff. ¶ 16 (filed May 1, 2012).

Paul Frank + Collins, P.C. (PFC) has represented Navigant throughout this proceeding. PFC has billed Navigant for attorney's fees and for costs in connection with defending the suit. Navigant expects that PFC will bill it for further fees and expenses in its continued defense of Citizens' cross-claim. There is no evidence as to whether Navigant's insurer has been paying or will pay PFC's bills.

## B. Analysis

Navigant asserts that it is entitled to summary judgment on its cross-claim against Citizens for indemnification because Citizens has expressly agreed to indemnify Navigant for the fees and costs billed to Navigant in this action. Citizens maintains that summary judgment is not appropriate because: (1) there are disputes about who the contracting entity was, the applicable agreement, and its terms; (2) an exception within the indemnification provision applies; and (3) summary judgment is precluded by defenses Citizens has raised that require factual adjudication. The Court takes up each of Citizens' arguments in turn.

### 1. Whether Factual Disputes Preclude Summary Judgment

Citizens asserts that there are factual disputes over whether: (1) Navigant was the entity that contracted with Citizens; (2) the terms in the "REED CONSULTING GROUP TERMS AND CONDITIONS" were part of the agreement with Citizens; and (3) whether those terms applied to the services that Navigant provided with respect to the Richford substation.

As described above, the Court has concluded that Navigant has come forward with evidence to support its contentions that Navigant was the entity that contracted with Citizens, and that the terms in the "REED CONSULTING GROUP TERMS AND CONDITIONS" were part of the agreement with Citizens. The Court has also concluded that Citizens has failed to come forward with any evidence that would create a dispute on those points.

---

[5] Citizens disputes the facts in this paragraph, asserting that Navigant has failed to support them with reference to any evidence. It is true that Navigant did not cite anything in the record for these assertions. However, these facts are well established in the record as well as prior court rulings. E.g., Ruling on Motions to Reconsider at 2 (filed Dec. 22, 2011) ("The parties participated in mediation in early February 2011, the result of which was that Plaintiffs reached a settlement with defendants Turner, Navigant, VELCO, and Stantec.").

That leaves Citizens' third basis for claiming that there is a factual dispute. Citizens asserts that the July 23, 1999 letter predates any planning for the Richford Substation upgrade, and does not (and cannot) refer to any such work. Citizens invites comparison to the May 30, 2001 letter from Mr. Shlatz, which does specifically refer to the substation project in Richford. Citizens maintains that the May 30, 2001 letter's reference to "Navigant's existing services contract" does not identify which contract it is referring to.

It is true that the July 23, 1999 letter does not specifically refer to the substation project in Richford. But that does not mean that its terms do not apply to the Richford project. The July 23, 1999 letter indicated that NCI/Reed would provide "on-going technical and professional support for [Citizens'] Vermont Electric Division." The terms of the agreement were plainly intended to apply to the on-going support, regardless of the particular project in which that support was offered. Moreover, on the present record, the reference in the May 30, 2001 letter to "Navigant's existing services contract" can only mean the July 23, 1999 letter. Citizens has not provided any evidence suggesting that there was some other services contract in force. Finally, to the extent the May 30, 2001 letter can be said to contain more specific provisions that might control over the more general provisions of the July 23, 1999 letter, the rule about specific contractual terms controlling over more general ones applies when the terms relate to the same matter. *Trinder v. Ct. Attorneys Title Ins. Co.*, 2011 VT 46, ¶ 19, 189 Vt. 492. In this case, there are no terms regarding indemnity in the May 30, 2001 letter, so the rule does not apply.

## 2. Whether an Exception to the Indemnification Provision Applies

Citizens notes that the indemnification provision includes the phrase "except as herein provided," and argues that the exception applies because it covers third-party liability claims like Mr. Hemond's claim for negligence against Navigant. According to Citizens, "Navigant's promise to provide professional engineering services that met industry standards could be the basis for imposition of liability on it by third parties such as Mr. Hemond who were the foreseeable victims of Navigant's breach." Opp'n at 21 (filed June 1, 2012). Citizens also asserts that Navigant could not limit Mr. Hemond's remedies in a contract with Citizens. *Id.* Citizens says that it therefore "follows that the way Navigant structured and wrote section 7, it created an exception to the declaration therein of no liability for the work other than to fix it within a year." *Id.*

In indemnity cases, the Court interprets the language "to give effect to the intent of the parties as that intent is expressed in their writing." *Hamelin v. Simpson Paper (Vt.) Co.*, 167 Vt. 17, 19 (1997). The exception at issue is Citizens' agreement that, "upon prompt written notification from you prior to the expiration of the one-year period following the completion of the assignment of any such fault or defect, such faulty portion of the services shall be redone at no cost to you . . . ." Here, the parties' clear intent was that Navigant's liability would be limited to the cost of redoing the faulty services. The Court can discern no intent for Navigant to be liable to any greater extent,

even when third parties bring claims against Navigant. The indemnity provision does not limit any third parties' claims, but shifts responsibility to the indemnitor (Citizens).

### 3. Whether Citizens' Other Defenses Preclude Summary Judgment

In its opposition, Citizens focuses on two of its affirmative defenses: voluntary payment of an unreasonable settlement, and Navigant's alleged lack of privity or standing by reason of payment to plaintiffs by Navigant's insurer rather than Navigant itself. Opp'n at 22–23. The Court begins with the latter defense.

Initially, although the "standing" concept is, at a general level, used to test whether a plaintiff possesses a sufficient interest in the action, using the standing doctrine in a case (like this one) involving only private claims is problematic. It can create "conceptual confusions [that] make unnecessary work" and may cause incorrect conclusions regarding the Court's subject matter jurisdiction, the availability of substitution to correct a real party in interest defect, capacity, intervention, etc. Wright & Miller, et al., Federal Practice and Procedure: Jurisdiction § 3531 (3d ed.) (WL updated Apr. 2012). Neither does there really appear to be any lack of contractual privity on Navigant's part, since the Court has concluded that there is no genuine dispute that Navigant and Citizens entered into the contract at issue.

Of course, if Navigant did have an insurer that paid the settlement, costs, and fees, that insurer may be subrogated to any right Navigant may have to indemnity from Citizens. See *Bank of the W. v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 480 (9th Cir. 1994). But the Court does not see how that fact would relieve Citizens of any obligation it might have to indemnify Navigant. See *Lesmark, Inc. v. Pryce*, 334 F.2d 942, 945 (D.C. Cir. 1964) (fact that indemnitees carried liability insurance which covered the plaintiffs' claims did not relieve the indemnitor of its obligation to indemnify).

The court turns now to Citizens' voluntary-payment defense. "To protect the indemnitor's right to defend against liability, a voluntary payment by an indemnitee, without notice to the person sought to be charged, may foreclose restitution." *DiGregorio v. Champlain Valley Fruit Co.*, 127 Vt. 562, 566 (1969). Citizens' attorney has stated in an affidavit that "Navigant did not provide notice to Citizens of its intention to settle." Shahi Aff. ¶ 7. However, it is undisputed that on two separate occasions Navigant called upon Citizens to defend the suit. Furthermore, Citizens admits that it was aware of the February 2011 mediation session that resulted in the settlements, and was in fact present for at least part of that mediation. It is therefore irrelevant that Navigant did not provide further notice to Citizens of its intention to settle—once Citizens refused to defend and it became necessary for Navigant to defend itself, Navigant was entitled to proceed in good faith to reach a reasonable settlement. *DiGregorio*, 127 Vt. at 566 (citing *Boston & Me. R.R. v. Howard Hardware Co.*, 123 Vt. 203, 210 (1962)); accord *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1094 (1st Cir. 1989) (noting that where indemnitor had notice of the plaintiff's suit but declined to defend it, the indemnitor will be bound by any reasonable, good faith settlement the indemnitee might thereafter make).

8

An indemnitee's payment is "voluntary" if the indemnitee is under no obligation to pay or where no interest of his is protected by the payment. *Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sr. Co.*, 132 Vt. 341, 344 (1974); see also *Peerless Cas. Co. v. Cole*, 121 Vt. 258, 263 (1959) (payment of settlement prior to any judgment was voluntary because the plaintiff was not under any compulsion to effect the settlements made). Here, no judgment compelled Navigant to pay the plaintiffs, so in that sense Navigant's payment was voluntary. In order to ensure that Navigant's payment was not voluntary in the sense that it was facing no exposure to legal liability at all, Navigant must prove its potential liability. See *One Beacon Ins., LLC v. M & M Pizza, Inc.*, 8 A.3d 18, 23 (N.H. 2010) (where indemnitor receives notice and opportunity to defend, indemnitee needs only to show potential liability); see also *Grand Trunk W. R.R., Inc. v. Auto Warehousing Co.*, 686 N.W.2d 756, 763 (Mich. Ct. App. 2004) ("[T]he indemnitee who has settled a claim need show only *potential* liability if the indemnitor had notice of the claim and refused to defend."); *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So.2d 1072, 1080 (Fla. Dist. Ct. App. 2003) ("Only if the indemnitor is not given notice and an opportunity to assume responsibility for the claim must the settling indemnitee show that it was *actually* liable to the plaintiff." (emphasis added)).

On the present record, and in the absence of a reply memorandum from Navigant, the Court cannot determine whether Navigant has proven its potential liability to the plaintiffs. The Court therefore also cannot at present make a determination about the reasonableness of the settlement. Consequently, it is premature to rule on whether Citizens' defense of voluntary payment precludes Navigant's recovery on its contractual indemnity claim.

### III. Conclusion

The Court concludes that the pending appeal before the Supreme Court does not deprive this Court of jurisdiction to decide the contractual indemnity issue. However, for the reasons discussed above, and because Citizens has asserted several other defenses to Navigant's contractual indemnification claim that have not been discussed at all, the Court concludes that Navigant is not entitled to summary judgment.

ORDER

Navigant's motion for summary judgment (filed May 1, 2012) is denied

Dated at Burlington this ___ day of October 2012.

_____
Brian Grearson
Superior Court Judge

9