2006 VT 100

## Jodi Wright, On behalf Of Casandra Hood v. Matt Bradley

[910 A.2d 893]

No. 05-467

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 15, 2006

*Michael D. Blair* of *Law Office of Michael D. Blair*, Barre, for Plaintiff-Appellant.

*Jon D. Valsangiacomo* of *Valsangiacomo, Detora & McQuesten*, Barre, for Defendant-Appellee.

¶ 1. **Dooley, J.** Jodi Wright, on behalf of her daughter, Casandra Hood (plaintiff), appeals the dismissal of her complaint for relief from abuse from defendant, Matt Bradley. The family court ruled that it did not have jurisdiction to sustain the order because plaintiff and defendant's relationship was not "of such substantiality" so as to be a "dating relationship" pursuant to 15 V.S.A. § 1101(2). Plaintiff contends the relationship was sufficient to give the court jurisdiction. We affirm.

¶ 2. Plaintiff's complaint alleges that defendant sexually assaulted her. We do not address that claim here other than to note the allegations that form the basis for the complaint as drawn from plaintiff's affidavit. In July 2005, defendant drove plaintiff and her friend to his parents' residence in Woodbury, Vermont, where he hosted a party. After several hours, plaintiff wanted to leave and

requested a ride home. Defendant refused to drive plaintiff home and denied her access to his telephone. Unable to leave, plaintiff slept on a couch in the living room where she remained until awakened by defendant, who then allegedly sexually assaulted her. Immediately following the incident, plaintiff left the house with her friend and went to a hospital for treatment. In the weeks that followed, plaintiff felt threatened by defendant and was afraid to return to the school they both attended without legal protection. Accordingly, plaintiff's mother sought a relief from abuse order, the denial of which is the basis for appeal.

¶ 3. Vermont's abuse prevention statute, 15 V.S.A. § 1103, sets forth the process by which relief from abuse orders are issued. Such orders may be issued only to family or household members against family or household members. *Id.* § 1103(a). Since plaintiff and defendant are not part of the same family, the court could issue a relief from abuse order only if they were household members at the time of the alleged abuse. The statute defines household members as follows:

> (2) "Household members" means persons who, for any period of time, are living or have lived together, are sharing or have shared occupancy of a dwelling, are engaged in or have engaged in a sexual relationship, or minors or adults who are dating or who have dated. "Dating" means a social relationship of a romantic nature. Factors that the court may consider when determining whether a dating relationship exists or existed include:
>
> (A) the nature of the relationship;
>
> (B) the length of time the relationship has existed;
>
> (C) the frequency of interaction between the parties;
>
> (D) the length of time since the relationship was terminated, if applicable.

*Id.* § 1101(2).

¶ 4. Plaintiff sought an abuse prevention order in August 2005, and the court issued a temporary ex parte order. The court held a hearing on September 8, 2005 on whether to issue a permanent order, and the focus was on whether plaintiff and defendant were "household members" because they had been in a dating relationship

sufficient for issuance of the order.[1] At the hearing, plaintiff testified on the issue as follows:

Q. [W]hat grade are you in?

A. 11th.

Q. Okay. How long have you known Matt Bradley?

A. For about two years, three years.

Q. During that two years, have you ever dated Matt Bradley?

A. Yes.

Q. And when did you date Matt?

A. Freshman year we went to a party together, and sophomore year I went to his house and we watched a movie together.

Q. Okay. Since that time, have you continued to make contact with Matt?

A. Yeah, we talked on the phone and we had talked in school.

Following this testimony, defendant's father testified and described the existence and nature of his son's serious dating relationship with another young woman during the time period referenced by plaintiff. Defendant's father stated that during his son's eighteen-month relationship with the other woman, she had been at their house "at least once a day," and had developed a strong relationship with defendant's family. In contrast, defendant's father stated that he had met plaintiff only once when the teens were together at his home to watch a movie.

¶ 5. The family court concluded that the teens' past dating relationship was not substantial enough to allow it to issue a relief from

---

[1] Plaintiff did not argue that, alternatively, the "relationship" requirement of § 1101(2), which expressly includes a current or previous "sexual relationship," could be met by the single alleged act of sexual assault.

abuse order and dismissed the complaint.[2] The court relied on the language of the statute, which encourages consideration of the nature, frequency, and duration of interaction, when making its determination. It considered plaintiff's sparse testimony in light of the factors in the statute and determined that plaintiff "failed to establish that the nature of the dating relationship in issue in this case is of such substantiality in light of the statutory criteria as to sustain her complaint for relief from abuse." On appeal, plaintiff questions the family court's interpretation of 15 V.S.A. § 1101(2), arguing that it overemphasized certain of the factors, particularly the requirement that the relationship be "romantic," and failed to consider the parties' age and maturity.

¶ 6. Issues of statutory interpretation are subject to de novo review. *McAlister v. Vermont Property & Cas. Ins. Guar. Ass'n*, 2006 VT 85, ¶ 11, 180 Vt. 203, 908 A.2d 455. Thus, our review of whether the Legislature intended for a dating relationship to be "substantial" in order for a relief from abuse order to be imposed is de novo. In construing a statute, we first look at the language. If the language is clear, we apply the statute in accordance with its plain meaning. *Travelers Ins. Co. v. Henry*, 2005 VT 68, ¶ 11, 178 Vt. 287, 882 A.2d 1133. In this case, we do not see a determinative plain meaning. The opening language of the statute provides that minors "who have dated" are household members and, therefore, subject to the jurisdiction of the court. 15 V.S.A. § 1101(2). That language alone could cover the circumstances present here because plaintiff and defendant arguably dated on two occasions in the past. On the other hand, the statute goes on to state that the court can consider certain factors to determine "whether a dating relationship . . . existed." *Id.* The factors — nature of the relationship, length of the relationship, frequency of interaction, time since the relationship was terminated — indicate that the Legislature wanted the court to consider more than the fact that past dating had occurred and to judge the strength and recency of the relationship between the parties.

¶ 7. In construing a statute, our goal is to implement the intent of the Legislature. *In re 232511 Invs., Ltd.*, 2006 VT 27, ¶ 7, 179 Vt. 409, 898 A.2d 109. In circumstances where the language of the statute has no plain meaning,

---

[2] In addition to the requisite relationship, the court also must find that defendant abused the plaintiff in order to grant relief. 15 V.S.A. § 1103(c). The parties do not dispute that the allegations were sufficient to satisfy the abuse requirement.

we must ascertain legislative intent through consideration of the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law. . . . All relevant parts of the applicable statutory scheme are to be construed together to create, if possible, a harmonious whole.

*In re Estate of Cote*, 2004 VT 17, ¶ 10, 176 Vt. 293, 848 A.2d 264 (internal citations omitted). In applying these principles to this statute, we conclude that the Legislature intended to require more than past dating — that is, it intended a dating relationship that was substantial. We reached a comparable conclusion with respect to brothers-in-law who "shared occupancy of a dwelling" for eleven nights over a thirteen-year period. See *Embree v. Balfanz*, 174 Vt. 560, 562, 817 A.2d 6, 9 (2002) (mem.) ("It is much too slender a reed to support the application of the Family Abuse Act to the parties in this case[.]"). Similarly here, the language shows that the Legislature did not intend for all "dating" relationships to permit the imposition of relief from abuse orders; otherwise the four-factor criteria set forth at § 1101(2) would be superfluous. See *In re Margaret Susan P.*, 169 Vt. 252, 263, 733 A.2d 38, 47 (1999) (rejecting statutory construction rendering part of statutory language superfluous).

■ ¶ 8. In view of the statutory language taken as a whole, we hold that plaintiff was required to show a substantial dating relationship to support her request for an abuse prevention order and the family court had discretion in determining whether that relationship existed. Two decisions from other states with similar statutes provide some guidance on where the limits of the concept lie. In *Andrews v. Rutherford*, 832 A.2d 379, 384-86 (N.J. Super. Ct. Ch. Div. 2003), the court found a dating relationship where the parties were together very frequently over five months, were affectionate with each other and had a sexual relationship. By comparison, the Supreme Judicial Court of Massachusetts found no substantial dating relationship based on statutory factors similar to those in Vermont where the only evidence was that defendant had "been over to [plaintiff's] house and he ha[d] taken [plaintiff] to the movies." *C.O. v. M.M.*, 815 N.E.2d 582, 588-89 (Mass. 2004) (internal quotations omitted).

¶ 9. Consideration of the factors outlined in § 1101(2) for determining whether a "dating" relationship exists — factors which the court "may" consider in its discretion — necessarily involves a case-by-case application. See 15 V.S.A. § 1101(2); *C.O.*, 815 N.E.2d at 587.

388

Accordingly, we afford deference to the family court in applying these factors to the facts of a particular case, and reverse only for abuse of the court's statutory discretion. See *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 471 (1998) (given family court's unique position to assess credibility, we will not set aside factual findings if supported by evidence). We must uphold the court's conclusions if supported by its findings. *Id.*

█ ¶ 10. Here, the trial court's conclusion is supported by the sparse evidence presented during the evidentiary hearing. All of the statutory factors pointed against a dating relationship. The two occasions relied upon — the party and the movie — happened in prior, and distinct, school years. Any alleged dating between plaintiff and defendant was infrequent and episodic at best. There was no evidence of the nature of the relationship, including whether or not it was "romantic" and to the exclusion of others. Plaintiff contends that the trial court should have considered fundamental differences between teenagers and adults when making its determination, and that it employed an unrealistic threshold in evaluating plaintiff's relationship with defendant. Although we doubt that plaintiff's perspective would lead to a different conclusion, we stress that we are not deciding here what conclusion the family court could have reached. We hold only that it did not abuse its discretion in reaching the conclusion it did.

*Affirmed.*