NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 93

No. 2020-102

| Melissa L. Scheffler | Supreme Court |
| | |
| v. | On Appeal from<br>Superior Court, Bennington Unit,<br>Family Division |
| | |
| Raymond G. Harrington | September Term, 2020 |

David A. Howard, J.

Melissa L. Scheffler, Pro Se, Bennington, Plaintiff-Appellee.

David G. Reid of David G. Reid, Attorney at Law, PLLC, Brattleboro, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **CARROLL, J.** Defendant appeals the issuance of a relief-from-abuse order requiring him to have no contact with and stay a hundred feet away from plaintiff (his sister), her residence, and their mother's home. The trial court issued the order because it concluded that defendant stalked plaintiff, within the meaning of 12 V.S.A. § 5131, by driving by her home on multiple occasions and honking his horn, which the court found constituted surveillance. On appeal, defendant argues that his actions do not amount to surveillance because surveillance requires "an intent to engage in a close watch or observation." We agree, and reverse because, based on the trial court's findings, there is no evidence defendant was closely watching or observing plaintiff.

¶ 2.     The court's findings of fact indicate the following. Plaintiff and defendant are siblings. Due to childhood allegations of "possible abuse," they did not have contact for approximately twenty years. The parties, however, had "indirect contact" through their mother. Around 2017 or 2018, their mother developed serious medical issues. She arranged a "truce" where plaintiff and defendant agreed to keep their dispute "to the lowest key possible" so they could cooperate for the mother's health and benefit. For a period of time, plaintiff and defendant communicated, "sometimes about pretty minor matters; sometimes, a little bit more involved."

¶ 3.     A day or two before the parties' mother died, she executed a deed to plaintiff that effectively removed the mother's house from her estate. As one of the ten people named in his mother's will, defendant was upset about the house being removed because this would reduce the amount he would inherit. Defendant sent plaintiff an email expressing his anger and concern about the deed. In the email, defendant told plaintiff that he hired an attorney to fight the deed in probate court and warned plaintiff that if she did not want the "estate eaten up," she should come clean because her "sneaky little ways of everything will be brought to the witness stand." Defendant filed an action in the probate court, which is still pending, challenging the deed. Plaintiff opposes the probate action, arguing that nothing improper occurred. This ended the "truce" between plaintiff and defendant.

¶ 4.     During the late summer and fall of 2019, defendant, by his own admission, drove by plaintiff's house and honked, in short beeps, to show his annoyance at plaintiff's actions. This occurred more than ten times. On some of the occasions, defendant would drive by more than once a day and honk several times or for longer "than a short beep." During this time period, plaintiff noticed that on several occasions defendant's vehicle was behind her as she was driving in town.

¶ 5.     On January 9, 2020, plaintiff filed a request for relief from abuse from a family member under 15 V.S.A. § 1103. The trial court issued a temporary relief-from-abuse order, which

2

was extended until the relief-from-abuse hearing on February 13. At the end of the hearing, the court made findings of fact and concluded that defendant abused plaintiff within the meaning of 15 V.S.A. § 1101(1)(D). Under that subsection, abuse is defined to include "stalking" under 12 V.S.A. § 5131(6). Under § 5131(6), stalking is defined as purposefully engaging "in a course of conduct directed at a specific person that the person engaging in the conduct knows or should know would cause a reasonable person to: (A) fear for his or her safety or the safety of a family member; or (B) suffer substantial emotional distress." A course of conduct is, in turn, defined "as two or more acts over a period of time, however short, in which a person follows, monitors, surveils, threatens, or makes threats about another person." 12 V.S.A. § 5131(1)(A).

¶ 6. The trial court concluded that defendant had engaged in a course of conduct because on more than ten occasions, he surveilled plaintiff by driving by her home and purposefully honking his horn.[1] The trial court explained that surveillance does not necessarily require "some sort of secret surveillance"—such as "standing in place with cameras, telescopes, or just sort of watching a location"—but "can be something in which a person makes clear, to the other person, that I've just been by your place . . . and possibly seen you." Based on this interpretation, the trial court concluded that defendant surveilled plaintiff because he "was making it clear that he was going by, that he was sort of checking that she would know that he had just been there and had come by." The court accordingly issued a sixty-day relief-from-abuse order requiring defendant to not contact plaintiff and to stay a hundred feet away from plaintiff, her residence, and their mother's home.

¶ 7. Defendant filed a motion to reconsider arguing that surveillance requires "a specific intent" to watch or keep track of another person, and there was no evidence that defendant ever traveled specifically to plaintiff's home to conduct surveillance or monitor her. The trial court

---

[1] The court ruled that defendant's actions did not constitute threatening, following, or monitoring.

3

denied the motion. It explained that defendant testified that "he honked the horn on occasions to let plaintiff know he was passing by her house." Although the court acknowledged that defendant "may have been traveling that route for legitimate purposes," it concluded that the honking of his horn "was a separate intentional act directed at her and, in the court's opinion, was a form of surveillance considering the antagonistic relationship existing between them." Defendant appealed.

¶ 8. On appeal, defendant argues that his actions do not amount to surveillance because the plain meaning of surveillance requires "an intent to engage in a close watch or observation." Plaintiff did not file a brief or participate in this appeal. Because "the family court is in a unique position to assess the credibility of witnesses and weigh the strength of evidence at hearing," we "review the family court's decision to grant or deny a protective order only for an abuse of discretion, upholding its findings if supported by the evidence and its conclusions if supported by the findings." Raynes v. Rogers, 2008 VT 52, ¶ 9, 183 Vt. 513, 955 A.2d 1135. However, "[i]ssues of statutory interpretation are subject to de novo review." Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893.

¶ 9. The only question presented in this appeal is a legal one: whether defendant surveilled plaintiff, within the meaning of 12 V.S.A. § 5131(1)(A), by driving by plaintiff's home and honking his horn?[2] "In construing a statute, our goal is to implement the intent of the Legislature." Wright, 2006 VT 100, ¶ 7. "In accomplishing this, our first step is to examine the statute's language because we presume that the Legislature intended the plain, ordinary meaning

---

[2] The trial court's relief-from-abuse order was only effective until April 13, 2020. This, however, does not moot the appeal because of the collateral consequences associated with relief-from-abuse orders. See Hinkson v. Stevens, 2020 VT 69, ¶¶ 21, ___Vt. ___, ___ A.3d ___ ("[W]hen a defendant appeals a stalking order while still subject to the stalking order, the expiration of the stalking order will not automatically render the case moot."); see also id. ¶ 19 (recognizing that "relief-from-abuse orders can result in collateral consequences of a lasting nature" (quotation omitted)).

of the statutory language." <u>Shires Hous., Inc. v. Brown</u>, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215. "When legislative intent is clear from the statutory language, we accept the plain meaning [and] our inquiry is at its end . . . ." <u>T.C. v. L.D.</u>, 2020 VT 19, ¶ 4, __ Vt. __, 229 A.3d 77.

¶ 10.    Surveil—which is the verb form of the noun surveillance—has a clear, plain meaning sufficient to resolve this case.  Black's Law Dictionary defines surveillance as "[c]lose observation or listening of a person or place in the hope of gathering evidence."  <u>Surveillance</u>, Black's Law Dictionary (11th ed. 2019).  Similarly, Merriam-Webster defines surveillance as "close watch kept over someone or something (as by a detective)."  <u>Surveillance</u>, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/surveillance [https://perma.cc/MR92-8NLG].  Cambridge Dictionary's definition of surveillance is also very similar: "the act of watching a person or place."  <u>Surveillance</u>, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/surveillance?q=surveillance. [https://perma.cc/KK5E-SUWS].  The plain meaning of surveillance requires, at a minimum, the intent to closely watch or carefully observe a person or place.

¶ 11.    Based on this plain meaning, defendant did not surveil plaintiff.  None of the trial court's findings indicate that defendant intended to, or in fact did, closely watch or carefully observe plaintiff when he drove by her home and honked his horn.  The trial court found that defendant did not intentionally drive past plaintiff's home and did not necessarily know whether plaintiff was home when he drove by and honked.  From these findings, there is no evidence that defendant was closely watching or carefully observing plaintiff.

¶ 12.    In concluding that defendant surveilled plaintiff, the trial court focused on the idea that by honking in front of plaintiff's home, defendant was sending a message to plaintiff that he had "been there and had come by."  The plain meaning of surveillance, however, requires close watching or careful observation, not the sending of a message.  Based on the trial court's findings,

there is no evidence that defendant was closely watching or observing plaintiff when he drove by her home and honked his horn.[3]

    <u>Reversed</u>.

                            FOR THE COURT:

                            _____

                            Associate Justice

---

[3] No party has argued, and we therefore do not consider, whether defendant's actions could amount to a course of conduct sufficient to constitute stalking on any other basis.