Filed 12/22/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 25-ST-00920

|  |  |
|---|---|
| Alannah Hartwell,<br>    Plaintiff<br><br>    v.<br><br>Eric Schuetz,<br>    Defendant | FINDINGS, CONCLUSIONS, AND<br>DECISION ON FINAL ORDER |

This matter came before the Court on September 11 and October 16, 2025 for a hearing on Plaintiff's request for a final protective order for relief from stalking against Defendant. Plaintiff Alannah Hartwell was present by Webex and represented herself. Defendant Eric Schuetz was present in person and was represented by Attorney Robert J. Kaplan, Esq. The Court heard testimony from both parties and one other witness, and admitted numerous exhibits, including one video exhibit. Plaintiff alleges that Defendant stalked her by surveilling and monitoring her with cameras set up in at his home, yelling at her and her dogs, and making false complaints about her behavior to law enforcement and the condominium homeowners association ("HOA"). Defendant denies the allegations and contends that the conduct is merely symptomatic of condo living and neighbor disputes.

On the basis of Plaintiff's allegations in her Complaint, the Court issued a Temporary Protective Order against Stalking on August 20, 2025, which, among other things, ordered Defendant to remove all cameras that pointed towards or inside Plaintiff's home. For the reasons set forth below, Plaintiff's request for a final protective order is DENIED.

## Findings of Fact

Based on the credible testimony presented at the hearing, the Court finds the following relevant facts to be established by a preponderance of the evidence.

Plaintiff Alannah Hartwell and Defendant Eric Schuetz live directly next door to each other in a condominium development in Bolton, Vermont. Ms. Hartwell lives with her roommate (the condo owner) in Unit 12. She has had cameras on her unit capturing images of the front and back of the property since before Mr. Schuetz moved in. Schuetz has similar "Ring" cameras on the exterior of or inside his unit, which also capture the scene in and around the front (including the porch area) and back of his home and development common areas, as well as to the side of his property from his upper deck and first floor window. Exs. A, S. The cameras are meant to monitor his property, but also capture views of his neighbors, including

Hartwell. They do not intentionally capture views inside of Unit 12 where Hartwell lives. Hartwell is aware of Schuetz's cameras and has seen a blue light turn on to indicate that a camera is recording. Being recorded on camera outside her home is upsetting and unsettling to Hartwell. She feels uncomfortable and experiences anxiety. Hartwell has changed her behavior in response by taking a different path to walk her dogs, spending less time outside, and being vigilant and nervous when she is outside her home.

Unfortunately, the relationship between the parties has been rather antagonistic, at least over the past year. Schuetz takes issue with the dogs belonging to Hartwell and her roommate being outside on common property without a leash, which is contrary to the HOA rules. In February 2025, an incident occurred around mid-morning where Hartwell's dogs went outside in the woods to relieve themselves, and Hartwell had to call to them to get them back inside, which disturbed Schuetz. In response, he yelled at Hartwell to "shut the F* up." He also wrote an email of complaint to Hartwell's roommate, the unit owner. *See* Ex. 2. Hartwell testified that she felt scared and uncomfortable when Schuetz screamed and cursed at her.[1] Later, in May 2025, Schuetz emailed the HOA Board members to complain that Hartwell and her roommate left trash bags outside, which could attract bears to the area, particularly given that the development had a history of bears living nearby. Ex. 3. Hartwell acknowledged that some trash was inadvertently left out on one occasion, but testified that this was a brief and not ongoing incident. In May 2025, Schuetz made a complaint with the Town of Bolton animal control department about Hartwell's dogs being unregistered, running around off their leash, leaving waste around his property, and creating a noise disturbance. Ex. 10. In July 2025, Hartwell and her roommate had an argument in their home, which Schuetz heard. Apparently, he called law enforcement to report a domestic disturbance or abuse incident. The police came to Hartwell's residence and left without further action. No criminal charges were filed. Following this occurrence, Hartwell lost a contract with a mental health agency for a shared living arrangement that allowed a client to reside her home. The agency terminated the contract, which had provided a fair amount of income for Hartwell.

Earlier in July, Hartwell made a complaint to the HOA Board regarding Schuetz smoking outside on his upper deck. She testified the smoke was blowing into her home, causing a nuisance and health concerns. Hartwell believes Schuetz's reports to the Town and police were made in retaliation for her complaint. Hartwell explained that she perceives Schuetz as having as embarked on a campaign of harassment by making false and exaggerated complaints to the HOA Board, and accusations against her character in his emails that are untrue and unwarranted. She asserts Schuetz has a fixation on her household and is monitoring her activities. The email complaints to the HOA Board and reports to the Town and police department made her feel thar this behavior was "escalating," and she became terrified that he would hurt her and/or her dogs. Hartwell acknowledged that Schuetz has never physically touched her or made any threats to physically harm her.

---

[1] Schuetz disputed Hartwell's account of this incident and denied yelling or cursing at Hartwell. However, the Court finds Hartwell's testimony regarding Schuetz's actions to be credible.

Schuetz explained that from his perspective, Hartwell's dogs cause a nuisance that disturb his peace because Hartwell and her roommate do not comply with the HOA rules. He had tried to limit his interactions with Hartwell over the past year. The cameras in and around his home are for his security and to protect his property, not for the purpose of monitoring or surveillance.

At the close of Plaintiff's evidence, Defendant moved for a directed verdict, which was denied by the Court. Following the conclusion of the hearing, the Court took this matter under advisement for and determination.

Conclusions of Law

To issue a no-stalking order against a defendant, a court must find by a preponderance of the evidence that the defendant has stalked the plaintiff. 12 V.S.A. § 5133(d). As relevant in this case, stalking "means to engage purposefully in a course of conduct directed at a specific person that the person engaging in the conduct knows or should know would cause a reasonable person" to either "fear for his or her safety" or "suffer substantial emotional distress," as evidenced by "significant modifications in the person's actions or routines." 12 V.S.A. § 5131(6). As used in the anti-stalking statute, "course of conduct" means "two or more acts over a period of time, however short, in which a person follows, monitors, surveils, threatens, or makes threats about another person, or interferes with another person's property." *Id*. § 5131(1). It includes "acts conducted by the person directly or indirectly, and by any action, method, device, or means." An "express or overt threat" is not required. *Id*. Finally, a "reasonable person" is defined as "a reasonable person in the victim's circumstances." *Id*. § 5131(4). As the party seeking relief, Plaintiff bears the burden of proving her claim by a preponderance of the evidence. *Id*. § 5133(b).

After careful consideration of all of the evidence presented, the Court concludes that Plaintiff has failed to meet her burden. As an initial matter, the Vermont Supreme Court has explained that to "threaten" means a "communicated intent to inflict physical harm on another person." *Hinkson v. Stevens*, 2020 VT 69, ¶ 46, 213 Vt. 32. Thus, to constitute stalking, a defendant must have an "actual intent to put another in fear of harm or to convey a message of actual intent to harm a third party." *Id*. ¶ 45 (quotation omitted). Further, the Court has made clear that "for purposes of the civil stalking statute," threatening "does not include constitutionally protected activity." *Id*. ¶ 41. Ms. Hartwell acknowledged that Mr. Scheutz has never threatened her with physical harm, nor can the Court find that any of his actions constitute threats under 12 V.S.A. § 5131(1). While Hartwell may have found Scheutz's emails and complaints "harassing," no overt or implied threats of physical harm were communicated, and making a complaint to civil authorities likely constitutes constitutionally protected activity. Moreover, while Hartwell may have been frightened when Scheutz screamed at her during the interaction in February 2025 concerning her dogs, she does not suggest that his statement was intended to communicate a threat of physical harm. *See Hinkson*, 2020 VT 69, ¶ 41 (stalking conduct was not proven where plaintiff "testified that the phone calls made her feel afraid, but she did not testify that she understood defendant to be communicating a threat against her," and instead "characterized the calls as 'harassing' her"); *see also Morton v. Young*, 2023 VT 29, ¶ 13, 218 Vt. 96 (holding that under *Hinkson*, social media posts that "threatened reputational or

3

emotional harm, but not physical harm," while "demeaning and disturbing[,] could not support a finding that defendant stalked plaintiff within the meaning of the statute").

Nor has Plaintiff met her burden to prove that Defendant purposefully engaged in a course of conduct to "monitor" or "surveil" her. As the *Hinkson* Court clarified, monitoring "involves tracking or collecting some form of information about the person being monitored or their activities." *Hinkson*, 2020 VT 69, ¶ 38. Likewise, the "plain meaning of surveillance requires, at a minimum, the intent to closely watch or carefully observe a person or place." *Scheffler v. Harrington*, 2020 VT 93, ¶ 10, 213 Vt. 364 ("Black's Law Dictionary defines surveillance as close observation or listening of a person or place in the hope of gathering evidence." (quotation omitted)). Based on the Court's experience in its stalking docket, the use of "Ring" cameras by homeowners is fairly ubiquitous in current society. While the Court understands Ms. Hartwell's discomfort, nervousness, and feelings of anxiety at being recorded on camera, the evidence does not support a finding that Scheutz was purposefully tracking or closely watching Hartwell in order to gather evidence about her and her activities. Rather, the cameras in and around Scheutz's condo unit serve the legitimate purpose of maintaining the security of his home and property by recording events that occur in the close vicinity.

Moreover, even if the Court were to find that Scheutz engaged in monitoring or surveillance of Hartwell, no anti-stalking order would issue because Hartwell failed to establish that Schuetz knew or should have known that his conduct "would cause a reasonable person" to either "fear for his or her safety" or "suffer substantial emotional distress," as evidenced by "significant modifications in the person's actions or routines." 12 V.S.A. § 5131(6). As the Court noted above, no threat of physical harm was communicated by Scheutz. In addition, while Hartwell accuses Schuetz of having a fixation on her household and testified that his behavior was "escalating" and put her in fear, the record evidence does not support such a finding. Although we do not doubt the sincerity of Hartwell's testimony, the Court does not find that the frequency or intensity of Schuetz's emailed or other written complaints to authorities regarding Hartwell's behavior or the actions of her dogs rises to the level of obsessive behavior that has been found to support stalking because it would create a reasonable fear for a person's safety. *See, e.g.*, *State v. Ellis*, 2009 VT 74, ¶ 26, 186 Vt. 232 ("We do not dispute that obsessive behavior, without threats or attempted acts of violence, can cause a reasonable person to fear unlawful restraint, but conclude that in this case defendant's actions do not rise to a level that would cause a reasonable person to have such fear. The facts of the decisions that have applied this obsession rationale are orders of magnitude more extreme than those before us.").

Nor does the evidence show the level of "significant modifications in the person's actions or routines," like "moving from an established residence" or "changes to established daily routes to and from work that cause a serious disruption in the person's life," that demonstrate the suffering of "substantial emotional distress" required to support a finding of stalking conduct. 12 V.S.A. § 5131(6)(B); c*f. Sullivan v. Keough*, Case No. 23-AP-398, 2024 WL 3043955, at *4 (Vt. June 2024) (unpub. mem.) (holding that evidence of defendant's flood and strobe lights aimed at plaintiff's home throughout the night that "prevented her from sleeping on multiple occasions and necessitated the purchase of window coverings," as well as "defendant's escalating conduct, including shooting a handgun continuously and randomly close to [her] home" supported the trial court's "findings that defendant's conduct resulted in 'significant' modifications to

plaintiff's routines and that she feared that his behaviors could become violent and therefore reasonably experienced substantial emotional distress").[2] The Court finds that the steps Hartwell has taken to limit her contact with Schuetz, such as spending more time inside her home or choosing a different path to walk her dogs, are more indicative of a desire to avoid the type of unpleasant interactions and conflict that can arise between contentious neighbors than symptoms of substantial emotional distress caused by any obsessive fixation and unhealthy monitoring by Schuetz.

Order

For the foregoing reasons, and based on the evidence presented, Plaintiff's request for a final protective order against stalking is DENIED for failure to prove her claim. Accordingly, the Court hereby enters Judgment for Defendant and closes this case.

The temporary protective order issued against Defendant is hereby VACATED.

Electronically signed on December 21, 2025 at 12:03 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

---

[2] Trial courts are free to "consider three-justice decisions from [the Vermont Supreme] Court for their persuasive value, even though such decisions are not controlling precedent." *Washburn v. Fowlkes*, Case No. 2015-089, 2015 WL 4771613, at *3 (Vt. Aug. 2015) (unpub. mem.) (citing V.R.A.P. 33.1(d), which provides that an "unpublished decision by a three-justice panel may be cited as persuasive authority but is not controlling precedent," except under limited circumstances).